Good morning, ladies and gentlemen. The first case for argument is McCarthy v. Longincombe v. Fuller. So, Ms. Kramer? A lot of trees were killed in this case. A lot of paper filed in this case. So what's important is to see the forest for the trees. The jury was not able to see the forest for all the trees that were filed in this case and arguments that were made. And even the trial court was not able to see the forest for the trees. So it's important to know what this case is really about and what it's not about. In essence, this is a theft case, theft of property. And then all of the other things in the case are to silence the victims and to conceal the thefts. So we can keep track of the forest if we look at what were the efforts to silence the victims. Well, can I ask you this? If we strike down this injunction, how are the appellees going to protect their reputation, given that your client kept his website up even after a large judgment was entered against him? First, Your Honor, he did not keep any of the posts related to them up after the judgment. He took all of them down. And the website itself was owned by Google. He couldn't close the website. Google would do that. The injunction is overbroad because the blog concerned matters separate from these appellees. How can they protect themselves the way the Constitution and all the case law, which was thoroughly briefed even by the amici, is by actions for damages. You can't enjoin future speech. That's the problem or the issue in defamation cases. We also present to the court that there's no jury verdict first that the blog was what defamed them. The jury didn't say. There were different issues of publications that were supposedly defamatory. Reports to law enforcement, reports to clergy, and also the blog. Patricia Fuller had nothing to do with the blog. So there were no specific in the jury verdict. There was nothing specific. Had a request been made to make specific findings on each of the alleged defamatory statements? No, Your Honor. Pardon me. The court had put together about 50, 55 pages of verdict forms and cautioned all the parties that any verdicts or special verdicts they wanted had to be in those forms. The appellees had the opportunity to ask for a specific verdict. There's no state, no verdict at all as to what statements defamatory of all the statements included. So we don't know what things. But the appellees had an opportunity. Oh, yes. Everybody had an opportunity to ask for a special verdict. Correct. On each alleged defamatory statement. Correct. And there was no request regarding any specific statement or finding regarding any specific statement. And there also was no finding as to what forum. And that leads to another serious error. There should have been summary judgment granted for appellants regarding alleged defamation for reports to law enforcement. That's privilege, qualified privilege under Indiana law. Should never have gone to the jury. So what are you asking for? We're asking for complete reversal of the entire judgment and remand for retrial because the appellants never had their day in court. No retrial of all issues or just with regard to defamation? All issues, Your Honor, because the jury, my clients never were able to put on their case. Their case was stopped and didn't go to the jury. There were erroneous summary judgments on the defamation claims. And your case, the case you wanted to put on was what? The civil RICO was essential to understanding the whole case. And that was wrongly dismissed on judgment on the pleadings. Was evidence presented, though, that would have supported the civil RICO? In other words, the jury heard all the evidence, right? No, they did not. They did not. And the jury was also misled because the appellees were allowed to tell the jury that it was legal for them to basically evade taxes and money laundering through BVM Foundation. And we argued on that. They were telling the jury that this illegal conduct, and there was money personally going to them. There were 501C3, but 60-something percent of the disbursements went to Kevin McCarthy personally. The jury was told by Mr. Langzenkamp and Mr. McCarthy that that was legal conduct and it was illegal. And the judge was concerned, what does that have to do with our case? Well, Sister Trace, Patricia Fuller, gave $300,000 to BVM thinking it's a valid 501C3, and it was not. So that's a great matter of public interest, and the jury never got to really hear the tax evasion counts. Originally in their amended complaint, they said that the claims that they evaded taxes were the most serious, most egregious of the alleged defamation. Then when we asked permission to file for summary judgment on it after all the... Your argument in your brief focuses on the injunction against defamatory comments. Are there other concerns that you have besides? The wrongful dismissal of the civil RICO, which was the heart of the case and makes the case understandable on the wrong standard of judgment. In fact, our interlocutory appeal that we filed in 2012 was to get the RICO before a jury. And at that time, this court said it was prematurely filed because the district court could still reverse its ruling about the judgment on the pleadings. But that's how serious we thought it was on the collateral issue doctrine that we should have been able to present the case in the context of civil RICO. That would have explained it to the jury. The jury was obviously confused with a lot of issues. So we are concerned with the civil RICO. We're concerned with the Seventh Amendment. What exactly was the civil RICO charge? The charge was that the appellees, that the opponents, were trying to hijack, take over, and did the devotion to Our Lady of America. And it had a number of predicate acts that qualify under the civil RICO statute. For example, the criminal copyright infringement, the mail fraud, soliciting donations for people who think they're donating to Our Lady of America, and they're really donating to the personal people ahead of BBM. So what relief were you asking with regard to the civil RICO? Was that damages, or did you want an injunction, or what? Well, there would, of course, be damages for all of the money that they solicited saying that it was going to the devotion to Our Lady of America. I'm just asking, what did you want by way of relief on your civil RICO claim? We wanted them, we asked for injunction that they stop infringing her copyright. She has exclusive right to distribute. The jury was told in the instruction that she owned the copyrights, instruction number 19, I believe. They were told she owns all the copyrights. There was also, in addition to there being no verdict, specific verdict regarding the defamation, there was no verdict saying that anything is in the public domain. What you have with the judgment that we're seeking to be reversed is that the judgment goes beyond and even contradicts some of the verdicts of the jury. There is no verdict at all that anything is in the public domain. The only question, they had a chance to write what verdicts they wanted. The only question was, are they liable for infringement? The only possible evidence to support them saying they're not liable is if the jury believed that they had consent or a license on the copyright. The trial was, what, seven weeks long? A little longer than seven weeks, Your Honor, yes. But do you think it wasn't long enough? No, I think theirs was too long and ours was too short. Pardon? We only had one week. We only had one week of it, and Appleese had estimated two weeks for their case. They took four weeks for their first case. Then we had one week, which was interrupted by a four-day weekend that the judge sprung on us, and then they had a rebuttal case, and Mr. Young put on his case. So they had all but one week of the trial. But it's not so much the length, Your Honor. It's what were we allowed to present. We were not allowed to present defenses such as truth as a defense because Inspector Hartman was forbidden from saying what investigative steps he took, what he did to show that he did not act recklessly and none of them acted with malice. Any time he tried to say what was the basis for what he wrote on a blog, and again the jury didn't say the blog specifically was what was defamatory, but even if you go with that, he was not allowed to say what documents he looked at, what steps he took to investigate. So he was not able to put on truth as a defense, especially regarding the tax evasion claims. I just want to go back to the RICO just for a minute. There was no verdict then on the RICO? Correct. It wasn't in there at all? No, it wasn't at all. And none of the predicate acts were identified in the verdict, or were they? They were not asked to say whether or not there was mail fraud. They were asked about copyright. Right, but these were some of the acts that you had alleged in the RICO. So they came in under the mail fraud, right, and the jury had to make a specific finding on. They didn't have to make a finding on mail fraud because the judge changed the way we had set up the counts and the claims and did his own organization, which was not workable. So they were not asked specific predicate acts other than in the sense of did they infringe by their statute, did they infringe by distributing their version of the booklet. Only in that sense, but not in the context of is this an enterprise. We were not allowed to put on, and that changed the whole way a case is. It's like conspiracy where you have people acting in concert, and you talk about one of them versus the other members. Well, right, the judge said that the RICO claim was invalid on the pleadings because there was no allegation of continuing racketeering enterprise. That's what he said, and he's wrong. Right, what's wrong with that holding? I didn't see much of an argument in your brief on this point. Yes, Your Honor. We actually listed probably two dozen or more parts of the amended counterclaims where we specifically alleged conduct that showed continuing crimes. Well, right, there were a great many allegations of wrongdoing associated with the transfer of this devotion and all of its constituent parts. But as I understand the judge's ruling, once that was accomplished, the deed was done, basically, and so we don't have any kind of continuing racketeering enterprise or at least not sufficient allegations to allow that claim to go forward. That's what he said, and that was the error. First off, there wasn't a transfer. There was a theft of the things. Well, right, the jury said no to that, so you lost. Without hearing, we didn't have our day in court, but with what they were given and the confusion that was created, they said no. But what the judge did wrong in that was he incorrectly defined what the purpose of the enterprise was. He said that the purpose was just to take the website, and that was, I mean, if you read the amended counterclaims, I don't know how you come to that conclusion. That was just one act. So he said that once they took the website, the deed is done, as Your Honor says. But that was not the purpose of the enterprise. The counterclaims state the purpose was to hijack the whole devotion. That was just one aspect of it. And you have a continuing enterprise even with the website. He also erroneously said on copyright law, he said, well, okay, they're offering this version, and maybe that just goes to money damages. No, each distribution, each day, each posting is a separate violation because they're distributing something that she had the exclusive right to distribute, and that's the jury was even advised, and that was an agreed-upon instruction, that they were told that she owns the copyright. So she had the exclusive right to distribute, so each day they're distributing is a separate violation. It's not just something about damages. So that's continuing, this distribution. The soliciting money is continuing. All of the acts for even into this case, they were putting on their website that they were acting in collaboration with Our Lady of America Center and her address, and they had nothing to do with her. That was even after this case was filed, I think one or two years into the case, and it's only when in deposition we said, you're saying that you're the Langston Camp family apostolate's working with Our Lady of America Center, and that's false. So it was also error to, in addition to the RICO, to throw out the deceptive trade practices under Ohio law and to throw out the Indiana RICO, which is even more generous for our side. So he was wrong in saying that it was over. He acknowledged the more difficult elements, which are the proof of the enterprise and the joining together. But as I say, he wrongly defined what the purpose or the goal of the enterprise was, limiting it to only taking the website. When you talk about the First Amendment, is it your position that an injunction can never be entered against with regard to a defamatory statement? On future speech, most likely, Your Honor. But what you have here is an overbroad injunction. They are not even allowed to talk about the counts that she won. They're not allowed to say when the jury did find that Mr. McCarthy defamed her, Mr. Langston Camp defamed her, Mr. Young defamed her. They found that McCarthy converted proceeds from her stock. They're not allowed to publish statements as to the counts they won. If the injunction simply forbade the repetition of the defamatory statements, would that violate the First Amendment? The problem in this case, Your Honor, is we don't know what the... No, no. Answer my question. If all the injunction did was say, you may not repeat these statements which have been found defamatory, would that violate the First Amendment? Yes, Your Honor. I believe it would. Well, that can't be right because then there's no effective relief at all. Yes, the effect... Because you get a judgment against the Defamatory Act. And the defendant simply repeats it the next day. Your Honor, the remedy... You have to bring a suit every day. The remedy under the case law is that you have more speech, not less speech. Now, wait a second. More lies? No, no. More defamation? No, more speech... Well, then you're not listening to me. What's wrong with an injunction which simply forbids the repetition of the defamatory statement? Speaking theoretically. But in this case, we don't know which specific statement is defamatory, so it can't be written in this case. Theoretically speaking... I'm asking you about the general issue, the scope of the First Amendment, whether it forbids an injunction against repeating a defamatory statement. I believe that you cannot... Pardon? I believe you cannot enjoin future speech... No, that doesn't make any sense because then the defamer would be free to repeat the defamatory statement day after day after day, and the victim of the defamation would have to bring suit after suit after suit. That doesn't make any sense to me. With each of those suits, they would have money damages, but we cited cases in the brief that show that same factual scenario, Your Honor, where the people then could go and repeat the same statement. But in this case, we don't know any particular statement that's defamatory. Yeah, but what if the defendant can't pay damages? Well, you have that in many... If there's no money. You have that in many situations. Pardon? So if he can't pay, then he's free to repeat the defamatory statement incessantly, and there's no remedy. That's what you're saying. He would have the burden of defending it each time? Yes, Your Honor. I'm saying that there would not be a way to stop future speech, even though there's a specific finding of defamation. We don't have a... I know what we don't have here. You're just asking. It's a specific finding. It's defamation. It's real clear, crystal clear. You're saying the judge can't enjoin somebody from making those identical statements time after time. That's what you're saying? Except in certain limited scenarios, which are discussed in some of the cases, in certain limited scenarios, certain very specific statements could be fashioned if they have certain effects. So the answer is yes, the judge does have the authority to do that, if it's specific. If in certain exceptional cases and certain results from it, then there would be scenarios where there may be a very limited injunction... To that statement. To that particular statement. Yes. Which is not this case. The judge became very exasperated with you because of repeated failing to comply with deadlines. Do you have any comment on that? Yes, Your Honor. I believe that that's another one of the multiple trees thrown about, in fact more like weeds, that are a distraction, and the judge addressed that even in his judgment or his order of sanctions. He threw that out as any grounds to sanction me. First off, I have certain disabilities, which he knew, and all the other federal judges. I've had federal practice for 30 of my almost 40 years as a lawyer, and all the judges accommodate that disability by starting at 10 o'clock for me, and he knew that. So even though he had the jury at 9, he made us come in at 8. I was on triple my medication. Now in terms of the filings, things like the uploading and all, everything just takes me much longer to do with my five disorders, and narcolepsy makes it hard to stay awake with the typing. But you're talking like four minutes after midnight. The issue, though, is that while he's doing that, microscopically examining it, he's ignoring... They were all on the record. When you asked for continuances to meet certain deadlines, did you put all that on the record? On the briefing, no, I talked about it. It came up in the trial, and when I mentioned to him, too, about it, he kind of smiled and I knew he was doing it deliberately. No, no, no. What I'm saying is you're saying you couldn't meet certain deadlines, that certain filings that you... By minutes that he... And that was pretrial as well. Right. Yes. Yes. He, in his orders, said that was not grounds... That's what they argued, and he said that's not grounds to sanction me, that it had no effect on the litigation, which it didn't. But he's ignoring at the same time... So I understand that that was what he said about sanction, because you blew the deadlines, they asked for sanctions. What I'm saying is... But he denied it on that basis. Yes, but what I'm... But he mentioned it, yes. But what I'm saying is you're not meeting the deadlines. Did you lay that out in asking for extensions of time, saying that you had a condition to the judge and asking for more time? Did you do that? I'm saying, did you do that? Probably in those instances where you're talking a few minutes after midnight, probably not. No, no, I'm saying you said that all the judges... No, I'm not asking for... You said that all the judges knew that you had a disability. Okay, we'll give you that. So what I'm saying is it's possible this judge didn't know. So what I'm saying is, because you're talking about the time the trial started, did you file something? Did you bring it to the judge's attention that this was an issue? Did you put that in the record? I brought it to his attention. When? It might have come up when we scheduled the times of the pretrials. It certainly came up in the trial. I talked with him personally. I talked with his bailiff about the schedule. I talked as the trial went on. I was falling asleep at night standing up. I fell asleep in front of the jury when they're reading transcripts. He was well aware of it. But I'm just saying, did you articulate that? As to the reason... Did you say it on the record? Either in writing? I don't think I... Or did you say it on the record, verbally? Because, see, that's what we have to operate on. Right, right. What you said. I'm trying to think of a post-trial... No, I'm talking about pretrial. I'm talking about during the trial. I don't know. I don't know the answer. I don't know. I don't know what was discussed in chambers, what was discussed on the record. I doubt that I put... I know after I might have put it in writing. I doubt if before there was something written on it. Because when I'm doing it, I don't know what's going to be after midnight. I'm still trying to meet the deadline. So there wouldn't have been a motion ahead of time. Now, when I knew, for example, when they're saying we waived the jury instructions, I was in trial, in criminal trial in Ohio. And that trial judge called up the district judge here and said, Ms. Kramer's in criminal trial. She's concerned about this deadline on the jury instructions. Can you give her more time? That's when 18 months before the trial, the magistrate, no, that was a motion for continuance. And she said, no, you cannot have more time on the jury instructions 18 months before trial. When she knew we also had the interlocutor... Okay. Thank you, Ms. Kramer. Your time has expired. Thank you, Your Honor. Mr. Swift. Good morning, Your Honors. May it please the court. I want to clean up a couple things that you were just talking about. First of all, there was no motion to the court requesting a 10 o'clock start or no time that she put on the record that she had a disability or that she needed some special accommodation. Because, of course, had she done that, you would have agreed to that. I think we would have, Your Honor, because whether we agreed to it or not, I know this particular judge would have granted it. Because he was extremely patient with appellants throughout the whole course of the case, gave them multiple warnings, they missed multiple deadlines, even got to the point where after multiple warnings they were sanctioned. And even after sanctionings, they still continued to miss deadlines. It finally got to the point that right before trial started he told all the parties that he was not going to consider anything that was filed late from there on after. And yet things were still filed late or not filed at all. Regarding the injunction, I thought the problem was that we don't really know whether the jury found all of the enjoined statements to be defamatory. Well, I think that's the claim, but I don't think that's correct at all, Your Honor. You know, on appeal you look at the evidence most favorable in light of the jury's verdict. And here they had a specific set of statements that were accused of being defamatory, and I think it was in Instruction 17. And based upon their verdict, I think it's reasonable to conclude that they found all of those statements to be defamatory per se. If you look at those statements, they all either accused my clients of criminal conduct or some type of misconduct in their profession or trade. Right, and there were different statements, and they were slightly different in terms of conduct, correct? That is correct. Right, so why didn't you ask for a specific finding in the verdict? I didn't think we needed to because they were all listed, Your Honor, every one of the statements. I understand they're listed, but normally in a defamation you would have the specific statements and the jury would check the box, yes, no, yes, no, yes, no. Then it makes it pretty easy to review on the record either the district judge in a post-trial motion or for us on appeal, is there evidence to support it? It makes a lot of sense to do that. I understand what your concern, Your Honor, but I think in this case if you look at what was presented, every one of those statements was addressed to the jury and every one of them is. The question is not whether the evidence is sufficient. Clearly there was evidence about each of these statements and the jury was provided with a list. The problem is that there's not an individual answer from the jury on the verdict form about each of these individual statements that was allegedly defamatory, and if you were going to seek a prospective injunction, as all injunctions are, if you were seeking prospective relief and joining specific statements, then you needed to get a verdict that specifically supported that. Otherwise you're in difficult prior restraint territory for First Amendment purposes. I believe, Your Honor, that it is very reasonable to look at the verdict and say, okay, they found all those statements defamatory. That doesn't accord with the Supreme Court's case law in this area where it has only authorized injunctive relief against speech in very narrow contexts where there has been a specific adjudication that a specific statement or, in the case of the obscenity case, a specific obscene material is obscene and therefore proscribable on a prospective basis. Those are very narrow exceptions to the general rule against prior restraints. And without the finding by the jury that specific statements are defamatory, it's very difficult to affirm an injunction that operates as a prior restraint on repetition of those statements in the future when we don't know which ones have been adjudicated defamatory. There's also a difficulty with this injunction under Rule 65 because the judge didn't explain why he was entering it. A couple of points, Your Honor. First of all, I believe that by finding defamation, the jury was saying all of these statements that are in this instruction were. We have no basis to conclude that. I think what you would have to show is that no reasonable jury could have failed to find that all these statements were defamatory, right? Yes, Your Honor. That would take care of the problem raised by Judge Sykes, right? No reasonable jury could. But so to take just one of them, the plaintiffs bribed various members of the clergy. Now, what was your evidence against that defamatory? What was your evidence that that was defamatory? Well. Was it just a denial or? It was more than just a denial. We put on evidence and testimony from some of the clergy that they were accused of being bribed of, showing that it wasn't a bribe at all. It was a donation. These men have given donations to Catholic charities throughout their whole adult life. And even some of the donations they're complained about occurred before the parties ever got involved with each other. You know, the jury heard all the evidence. They heard the testimony, and they just didn't buy it. Well, how about, all right, my favorite is number seven. Langzenkamp was involved in a car chase, which he chased Fuller, Ms. Fuller, chased Fuller around Forstoria. So what was the evidence on the car chase? Well, certainly Mr. Langzenkamp gave his testimony, but there was another individual that was in the car with him. It was an attorney from the Western Herd Law Firm in Cleveland that was representing Ms. Fuller at the time, Karen Davey. And she testified at trial that there was no chase. They were there because they hadn't heard from her. They had tried to contact her, and she wasn't returning their calls. So they drove over there, and they went to her place, and she wasn't there. They saw her in a car, and they followed her. It wasn't a chase, Your Honor. There was no traffic laws broken. When she finally stopped and they got out, they were told that she didn't want to speak with anybody at this point in time, and so they left. But, you know, car chase imputes, you know, they were breaking traffic laws. They were doing unsafe things, and the testimony that was presented by Mr. Langzenkamp and Ms. Davey just refuted that, and the jury believed them and not the appellants. Was the only relief sought an injunction? No, we sought money damages and injunctive relief, Your Honor. So that's why a jury determined that there was defamation? Because you could just have asked. If you just asked for an injunction, that wouldn't have been a jury. Right, no, we asked for damages also. In fact, there were punitive damages awarded against Mr. Hartman. And this case kind of illustrates one of the points that the modern rule regarding defamation and injunctive relief highlights, and that is that in a situation where you have a judgment-proof defendant like Mr. Hartman claims to be, then there is no redress for somebody that wins a defamation-suited trial because if you don't have an injunction and you can't get damages, then you've just spent, in terms of my clients, years and a lot of money in using a judicial system that they're supposed to turn to instead of turning to some type of self-help remedy. And then you get to the end of everything, you spend a lot of money, and you find out you've got a judgment-proof defendant, and you don't have any injunctive relief. I mean, it's just not justice. Another line item in the injunction is that the defendants are enjoined from saying that the plaintiffs are con men, crooks, forgers, thieves, racketeers, or otherwise stole or converted property from Fuller or engaged in any conspiracy against Fuller with any Catholic clergy, lawyer, canon, or civil, or investigator, or any Catholic layperson promoting the devotion. I mean, that's extremely broad and covers all kinds of speech that's of an indefinite nature. Well, but all those categories fall within the categories of the specific defamation that occurred. Right, but we're talking about what they can and cannot speak in the future. This is extremely broad and indefinite. How is any judge supposed to adjudicate a contempt motion down the road if a speech that comes close to one of these allegations is uttered? I just don't see how this passes First Amendment muster. Perhaps things could have been tailored a little bit more closely. But what are the, again, the— Well, again, that requires specific findings on which statements were defamatory. I mean, one basic requirement of the First Amendment is to avoid vagueness, right? Right, I understand that. And fair notice, right? So they need to know specifically what they cannot utter. And without a specific verdict on specific statements and an injunction that is specifically tailored to that, apart from the general question about whether injunctions are generally available against defamation, that's a separate legal question. But assuming for the sake of argument that they are within very narrow limits, I just—this is extremely broad and vague. Again, regarding the eight or nine specific statements that were in the jurisdiction, I think it's a reasonable position to take that the jury found them all defamatory. Regarding that particular one— Let's go back to that statement Judge Sykes did. The plaintiffs are con men, crooks. Like, that's not in the ten statements that are there. There's no finding of con men. And it would be problematic anyway because con men is even a vague term. But that's not—I mean, I know you're saying it's tied to it, it's implicit, you can discern that, but that's not enough. Making the leap from—even if we take these as that they found all of these, if you're making a big leap to get to the statements that were ultimately in the injunction— Well, statements like, you know, she stole $750,000, that certainly falls within the crooks category. The fact that they hijacked the devotion falls within the con man category. Again— Of course, they could be crooks but not have stolen $750,000. They could be little crooks. Let me ask you this. If a contempt proceeding were brought against Fuller for violating the injunction, would she be able to advance a defense of truth? Would she be able to advance truth? Is that what the question is, Your Honor? Yeah, a defense of truth. Well, absolutely. A defense of truth is always a defense of defamation. Now, the jury found that all those were lies and they were defamation. So if there were a contempt proceeding, she could try to present evidence that the jury was wrong, right? Is that what you're saying? No, I don't think so. I think it would require a situation where this was a new allegation of a new instance of bribe. Because the jury has already decided that issue. Wait a second. Take the car chase. Suppose that Fuller is enjoined from claiming that Long and Som was involved in a car chase. Suppose years later, Fuller repeats the allegation that Long and Som chased her. But this time she has found new evidence that supports the claim. Now, would she be permitted to advance that evidence in a contempt proceeding? I think she would, Your Honor, if it's truly new evidence. I don't know of any rule that would say that she cannot. Okay, thanks. I was just interested in what you thought of that. The other problem with the injunction is that its opening language prohibits the statements that are listed, which, again, include these broad, vast areas of proscribed speech. But it also says, as well as any similar statements that contain the same sorts of allegations or inferences in any manner or forum. That's extremely broad. It is and it isn't. From the standpoint, for instance, if one of the statements was, my client stole $750,000. So if you said, well, he can only not say that specific statement, then what prevents him from saying, well, they stole $749,000? So the defendants are forever permanently enjoined from ever maintaining that the devotion was misappropriated. Those words, in any form or fashion, can never pass through their lips or through the keyboard of a computer in an e-mail, in a blog post. They can't give an interview to the local Catholic press saying, I continue to believe that my rights in this devotion were misappropriated. They cannot say that under this injunction without risking contempt of court. That's right. And that's what you want? Why do you need that against these people? That is appropriate. Why do you need that injunction? Why is it so important that you silence them going into the future? You've won a judgment. You have damages. Damages we can't collect, by the way. You've been vindicated. Damages we can't collect. Is this important to the integrity of your clients or the devotion, the future integrity of the devotion that you silence these people going forward? Silence them from the standpoint of claiming my clients did something that they didn't do. Mr. Langzenkamp explained this during trial, during his direct testimony. He just wanted this to stop. These people were out defaming him. They were sending letters. And you have a jury verdict. We have. And if they put any allegations of that on the Internet, you can put your jury verdict up in response, and it speaks for itself and vindicates your clients. It is awfully broadly drafted. It does. For example, at the beginning it says, permanently enjoined from publishing the following statements, as well as any similar statements that contain the same sorts of allegations or inferences in any manner or form. Well, they could be similar statements that contain the same sorts of allegations, but not the same statements and not the same allegations. And in any manner or form? What does in any manner mean? Well, whether it's on the Internet or sending a letter or putting something in a newspaper. That's not what manner means. That's form. You say in any manner or form. I mean, form I understand. That includes the Internet. What is in any manner? Going to a public gathering and getting up on a pulpit and saying it. Again, this isn't protective speech. This is speech found to be defamatory. It has to be in a pulpit. We don't know which specific utterances were found to be defamatory. And I know you're taking that. To block them from standing up in public or even uttering to another person that they continue to believe that the devotion was misappropriated. Why aren't damages in the future enough of a threat? Because Mr. Hartman has already told us that he can't pay damages, that he will declare bankruptcy if we go after the damages. So he's judgment-proof. So what other relief do we have if we don't get the injunction? That's not justice. Okay. Well, thank you very much, Mr. Swift.